UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| T.C.<br><br> *Petitioner*,<br><br>  *v.*<br><br>DENNIS MATULEWICZ, Acting United States Marshal, District of Massachusetts, and<br><br>SAKO LONG, Regional Director, Northeast Region, Commonwealth of Massachusetts Department of Youth Services,<br><br> *Respondents*. | Docket No. 26-cv-12336 |

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND REQUEST FOR INJUNCTIVE RELIEF STAYING EXTRADITION**

1. Petitioner T.C. respectfully petitions this Honorable Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241 and for injunctive relief staying his surrender to the Republic of Turkey pending adjudication of this petition and any appeal.

2. This petition challenges the continued use of an extradition certification issued on February 11, 2025 to authorize T.C.'s surrender on a materially different post certification Turkish indictment issued on March 10, 2026. The original extradition complaint sought T.C. for prosecution on a charge of causing reckless killing and injury under Turkish Penal Code Article 85/2, subject to the juvenile age reduction under Article 31/3. The extradition materials did not invoke Turkish Penal Code Article 22/3, did not provide the text of Article 22/3, did not allege conscious recklessness as the charging theory, and did not seek the one-third to one-half punishment increase that Article 22/3 now supplies.

3. After certification, Turkey issued a formal indictment charging T.C. with "Causing

1

death or injury with conscious recklessness," identifying Articles 85/2, 22/3, and 31/3 as the operative provisions, and expressly requesting that the Turkish trial court increase the base sentence by one-third to one-half because "the act [was committed] with conscious recklessness." Exhibit 1 and 2. That indictment is now the operative charging document in Turkey. It is not the same charging and punishment basis presented through the Treaty process, considered by the extradition court, or certified under 18 U.S.C. § 3184.

4.      T.C. therefore moved to reopen the extradition hearing and for reconsideration of certification. *See In re Extradition of T.C.*, No. 24-mj-01365-DLC, Dkt. 177 (D. Mass.). He asked the extradition court to decide whether the certification still corresponded to the offense and punishment Turkey now seeks to pursue; whether Article 22/3 was required to be presented under Article 7 of the Treaty; whether prosecution or punishment on that aggravated basis requires consent and compliance with Article 16 of the Treaty; and whether there is probable cause to support the newly alleged conscious recklessness theory.

5.      On May 18, 2026, the magistrate judge denied that motion. *See* Exhibit 2. The court questioned whether it had authority to consider the motion at all because certification had been issued approximately 15 months earlier. The court then held that Article 22/3 is not an independent offense but only an aggravating feature or penalty enhancement, deferred to a Turkish prosecutor's description of Article 22/3,[1] analogized Article 22/3 solely to a drug quantity sentencing

---

[1] In its submission, the Turkish government stated: "The provision set forth under Article 22/3 of the Criminal Code of Türkiye does not constitute an independent offence in terms of the Turkish law but it has an aggravating nature." Exhibit 1 at 9. That statement did not address whether Article 22/3 requires proof of an additional culpability finding before it may be applied. Next week, the defense expects to receive evidence from a Turkish lawyer explaining Article 22/3, its relationship to Article 85/2, and the additional facts or mental state findings required to establish conscious recklessness under Turkish law. Counsel will seek leave to file that information promptly upon receipt.

enhancement, concluded that no probable cause or consent inquiry was required, and alternatively found that the prior probable cause facts were sufficient to establish conscious recklessness.

6.      That ruling leaves T.C. in custody and subject to surrender on a certification that no longer matches the operative Turkish extradition request. *Habeas* relief is warranted because the denial permits extradition on an offense and punishment theory that was not presented through the Treaty, was not certified under § 3184, and was not supported by a separate probable cause determination before T.C. was exposed to surrender.

7.      Accordingly, T.C. respectfully requests that this Honorable Court determine whether the offense and punishment now underlying Turkey's request are within the scope of the Treaty and the existing certification; whether Turkey supplied the documents required by the Treaty; whether Article 16's rule of specialty protections have been followed; and whether competent evidence establishes probable cause for the specific offense and punishment theory now being pursued.

## I.      PARTIES

8.      Petitioner T.C. is a natural born United States citizen. He is in custody pursuant to the certification and committal order entered in *In re Extradition of T.C.*, No. 24-mj-01365-DLC (D. Mass.). He is the subject of the May 18, 2026 Order denying his Motion to Reopen Extradition Hearing and for Reconsideration of Certification. *See* Exhibit 2.

9.      Respondent Dennis Matulewicz is the Acting United States Marshal for the District of Massachusetts. He is named in his official capacity because T.C. is held pursuant to the Marshal's custody and the extradition court's certification and committal order.

10.      Respondent Sako Long, Regional Director of the Northeast Region of the Commonwealth of Massachusetts Department of Youth Services, is the immediate custodian of

T.C and, according to the Government, is the appropriate respondent. *See T.C. v. Kyes,* No. 25-cv-12458-ADB, Dkt. 27 at 1, n.1 (D. Mass).

## II.   JURISDICTION AND VENUE

11.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2241. T.C. is in custody under color of federal authority and challenges that custody and threatened surrender as unlawful under the Constitution, laws, and treaties of the United States.

12.   *Habeas corpus* is the proper vehicle to review an extradition certification and related custody. *See Aguasvivas v. Pompeo*, 984 F.3d 1047, 1057-58 (1st Cir. 2021).

13.   Venue is proper in this District because the extradition proceeding, certification, committal order, motion to reopen, and order denying reopening were entered in the District of Massachusetts, and because T.C. is in custody in the District of Massachusetts.

## III.   FACTUAL BACKGROUND

### A.   *The original extradition request and certification.*

14.   On May 3, 2024, the United States filed a complaint seeking T.C.'s extradition at Turkey's request. The complaint sought extradition for prosecution on a charge of causing reckless killing and injury under Article 85/2 of the Turkish Penal Code. The complaint also cited Article 31/3, which reduces the potential punishment due to T.C.'s age at the time of the alleged offense.

15.   The original extradition complaint, supporting Turkish materials, arrest warrant, and Treaty submissions did not cite Article 22/3, did not include the text of Article 22/3, did not identify conscious recklessness as the charging theory, and did not request a punishment increase based on Article 22/3. *See In re Extradition of T.C.*, No. 24-mj-01365-DLC, Dkts. 5-1 and 70-1 (D. Mass.).

16.   Article 7(1)(e) of the Treaty requires the requesting state to provide "[t]he text of

the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense." Treaty, art. 7(1)(e).

17.     The extradition court certified extraditability on February 11, 2025 based on the Article 85 offense, as reduced by Article 31/3. In doing so, the court understood the case as one involving an Article 85/2 offense and an Article 31/3 age based reduction, and stated that T.C. "would appear to be subject to up to ten years imprisonment under Turkish law." *In re Extradition of T.C.,* No. 24-mj-01365-DLC, Dkt. 157 at 18-20. (D. Mass.)

18.     The court's certification did not address Article 22/3, because Article 22/3 was not part of the Turkish request, not part of the submitted legal materials, not part of the arrest warrant, and not part of the offense or punishment framework presented to the court at the extradition hearing.

19.     The extradition court committed T.C. to the custody of the United States Marshal pending the Secretary of State's surrender decision.

20.     T.C. previously challenged the extradition court's certification through a *habeas* petition. *See T.C. v. Kyes*, No. 25-cv-12458-ADB (D. Mass.). On August 1, 2025, the district court denied T.C.'s prior habeas petition challenging the certification. *Id.* at 23. T.C. promptly appealed that decision to the First Circuit. Following the issuance of the March 10, 2026 indictment, that appeal was dismissed by consent as moot. [2]

---

[2] That petition addressed whether T.C. was being prosecuted or charged in Turkey and relied, in part, on the absence of a formal indictment. Once the March 10, 2026 formal indictment was issued, that *habeas* and the subsequent appeal, were moot. At the time the First Circuit appeal was dismissed, extradition remained administratively stayed, and a motion for a further stay was pending.

**B.      *The March 10, 2026 Turkish indictment.***

21.      On March 10, 2026, after certification and after the prior *habeas* proceeding, the Istanbul Chief Public Prosecutor's Office issued a formal indictment.

22.      The indictment does not merely restate the original Article 85/2 and Article 31/3 charges. Instead, it identifies the charged offense as "Causing Death or Injury with Conscious Recklessness." It lists Turkish Penal Code Articles 85/2, 22/3, and 31/3 as the charging articles. It alleges that T.C. committed the act with conscious recklessness. It requests that the Turkish trial court increase the sentence by one-third to one-half because "the act [was committed] with conscious recklessness." *See* Exhibit 1.

23.      Article 22/3 provides, as the extradition court later quoted, that "[a]n act is conducted with conscious recklessness when the result is foreseen but is not desired; in this case, the penalty for the reckless offence shall be increased by one-third to one-half." Exhibit 2 at 3, n.2.

24.      The new indictment therefore adds at least three features that were absent from the extradition request and certification: (a) a new aggravated culpability theory requiring foresight of the result; (b) a new statutory provision defining that theory; and (c) a new punishment increase of one-third to one-half above the punishment range the extradition court considered when it certified extradition.

**C.      *T.C.'s Motion to Reopen.***

25.      On March 20, 2026, T.C. moved to reopen the extradition hearing and for reconsideration of certification considering the materially different post-certification indictment.

26.      T.C. argued that the new indictment materially altered the certified offense and punishment; that Article 22/3 had never been submitted under Article 7; that Article 16 and the rule of specialty prohibit prosecution or punishment for an offense other than that for which

extradition was granted absent consent and renewed Article 7 compliance; and that the court had never made a probable cause determination as to conscious recklessness. *See In re Extradition of T.C.*, No. 24-mj-01365-DLC, Dkt. 177 (D. Mass.).

27.     T.C. also argued that the court had authority to reopen or reconsider the certification because the indictment was newly issued after certification and presented a new extradition related argument that was unavailable at the original hearing. *See Skaftouros v. United States*, 667 F.3d 144, 153, n.13 (2d Cir. 2011) (explaining that when a new extradition-related argument was unavailable at the time of the original habeas filing, the proper course is either to amend the petition or "to move in the original extradition court to reopen the extradition proceedings and reconsider the extradition order in light of the newly available argument"). The government opposed reopening.

28.     As part of its submission, the government represented that the March 10, 2026 indictment and Article 22 materials had not been submitted through the Treaty process before certification. Instead, Turkey later provided an "advance copy" of a supplement that it "intends" to submit "through the diplomatic channel." *In re Extradition of T.C.,* No. 24-mj-01365-DLC, Dkt. 178 at 3, n.1 (D. Mass). That copy was formally submitted on April 10, 2026. *Id.* at Dkt. 182.

**D.     *The May 18, 2026 denial of reopening.***

29.     On May 18, 2026, the extradition court denied T.C.'s Motion to Reopen Extradition Hearing and for Reconsideration of Certification.

30.     As a threshold matter, the court stated that "it is questionable whether the court has any authority to consider the motion" because it had certified T.C.'s extradition in February 2025 and issued a certification and committal order to the Secretary of State approximately 15 months earlier. Exhibit 2 at 5.

31.    The court then held that Article 22/3 does not set forth an independent offense. It deferred to the Turkish prosecutor's statement that Article 22/3 "does not constitute an independent offence in terms of Turkish law but it has an aggravating nature," and relied on *In re Taylor*, 484 F. Supp. 3d 13, 15 (D. Mass. 2020), for the proposition that extradition proceedings are not vehicles for United States courts to interpret and opine on foreign law. Exhibit 2 at 5.

32.    The court analogized Article 22/3 to domestic a drug weight enhancement, *citing United States v. McHugh*, 769 F.2d 860, 868 (1st Cir. 1985),[3] and concluded that Article 22/3 is not "a new and materially different charge." Exhibit 2 at 6.

33.    Based on that conclusion, the court held there was "no need to reopen the hearing to consider whether probable cause exists for the Article 22/3 enhancement" and "no need to reopen the hearing to consider whether the United States has or has not consented to Turkey prosecuting T.C. for Article 22/3." Exhibit 2 at 6.

34.    Alternatively, the court stated that even if Article 22/3 were an offense requiring probable cause, the facts previously found establish probable cause for conscious recklessness. Exhibit 2 at 6-7.

35.    This petition follows.

---

[3] Unlike in *McHugh*, the addition of Article 22/3 did more than increase the potential punishment; it altered the *mens rea* element required to convict and punish T.C. Moreover, even provisions characterized as sentencing enhancements may need to be proved to a jury beyond a reasonable doubt when they function as elements of an aggravated offense. *See United States v. Promise*, 255 F.3d 150, 156–57 (4th Cir. 2001) ("*Apprendi* dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense, *i.e.,* charged in the indictment and proved to the jury beyond a reasonable doubt.").

## IV.    LEGAL STANDARD

36.    Under 18 U.S.C. § 3184, the extradition court must determine whether the requesting state has submitted a treaty compliant request and whether "the evidence [is] sufficient to sustain the charge under the provisions of the proper treaty or convention." 18 U.S.C. § 3184.

37.    The Secretary of State's surrender authority begins only after a proper judicial certification. The Secretary may consider diplomatic, humanitarian, and foreign policy issues, but the extradition court's gatekeeping role over treaty compliance and probable cause is judicial and cannot be displaced by the Executive.

38.    *Habeas* review of an extradition certification is limited but meaningful. A petitioner may challenge whether the extradition court had jurisdiction, whether the charged offense falls within the treaty, whether the treaty's requirements were met, and whether there was competent evidence supporting probable cause. *Aguasvivas*, 984 F.3d at 1055-58.

39.    This petition falls within that scope. It challenges the scope and continuing validity of a certification when the requesting state, after certification, issued a materially different charging instrument that invokes a new statutory provision, recasts the *mens rea* theory, and increases the potential punishment.

40.    The rule of non-inquiry does not bar the petition. T.C. is not asking this Court to inquire into Turkey's prison conditions, fairness of Turkish proceedings, or likely treatment after surrender. He asks only whether the offense and punishment now being pursued are the same offense and punishment presented under Article 7, certified under § 3184, and authorized by Article 16.

41.    Nor is this petition an impermissible collateral attack on Turkish law. The dispositive question is not only whether Article 22/3 is technically denominated as a separate

9

offense under Turkish law, but whether the United States may surrender T.C. on a certification issued 15 months prior without Article 22/3, where Turkey now seeks to use Article 22/3 to change the required culpability theory and increase punishment.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of 18 U.S.C. § 3184 and Article 7 of the Treaty

42.    T.C. realleges and incorporates paragraphs 1 through 41 as if fully set forth herein.

43.    Article 7 of the Treaty required Turkey to submit the legal provisions defining the offense and prescribing the punishment for the offense before extradition could be certified. Article 7(1)(e) is the mechanism by which the extradition court determines what offense is being charged, what punishment is being sought, whether the offense is extraditable, whether dual criminality exists, and whether the evidence is sufficient to sustain the charge.

44.    The original Treaty submission did not include Article 22/3. It did not provide the law defining conscious recklessness. It did not provide the law prescribing the one-third to one-half punishment increase. It did not advise the extradition court that Turkey would seek an aggravated culpability finding based on actual foresight of the result. The certification therefore could not and did not certify extraditability on that basis.

45.    *Aguasviva*s confirms that Treaty document requirements matter and are judicially enforceable on *habeas* review. In *Aguasvivas,* the First Circuit affirmed *habeas* relief where the government's submission failed to supply the documents the treaty required. 984 F.3d at 1055-58. The same principle controls here. Turkey cannot obtain certification on one set of submitted laws and charges and then rely on a post-certification indictment that adds an omitted law defining the culpability theory and increasing punishment.

46.    The magistrate judge's contrary conclusion effectively reduces Article 7(1)(e) to a

one-year-minimum screen. That is inconsistent with the Treaty text or any precedent. Article 7 expressly requires the law "defining the offense" and "prescribing the punishment for the offense." Treaty, art. 7(1)(e). If the only purpose of Article 7(1)(e) were to confirm a one-year penalty threshold, the Treaty would not separately require the submission of law defining the offense, the law prescribing punishment, the law relating to limitations, and the law relating to enforcement of the penalty. *See United States v. Rauscher*, 119 U.S. 407, 421(1886) ("If the proceedings under which the party is arrested in a country where he is peaceably and quietly living, and to the protection of whose laws he is entitled, are to have no influence in limiting the prosecution in the country where the offense is charged to have been committed, there is very little use for this particularity in charging a specific offense, requiring that offense to be one mentioned in the treaty, as well as sufficient evidence of the party's guilt to put him upon trial for it").

47.     The fact that Article 22/3 may be described as aggravating rather than independent does not cure the omission. Article 7 requires the requesting state to supply laws prescribing punishment, not merely laws for independent offenses. Article 22/3 prescribes a punishment increase of one-third to one-half. It therefore falls squarely within Article 7(1)(e).

48.     The magistrate judge's domestic drug weight analogy does not answer the treaty question. Even if a domestic penalty provision may be treated as a sentencing enhancement for domestic charging purposes, Article 7 requires the requesting state in an extradition case to present the applicable foreign law defining the offense and prescribing punishment. A domestic sentencing enhancement cannot override the Treaty's textual requirements and overlooks that Article 22/3 charged a different, more aggravated theory of *mens rea*.

49.     The denial also treated the extradition court's authority to reopen as questionable because certification had already issued. Exhibit 2. But the post-certification indictment did not

exist when the court certified extraditability. Where a materially new extradition argument becomes available only after certification, the proper course is for the extradition court to reopen or reconsider, or for the *habeas* court to ensure that the certification is not used beyond its lawful scope. *Skaftouros*, 667 F.3d at 153, n.13; *see also United States v. Stokes*, 726 F.3d 880, 885 (7th Cir. 2013) ("a nation securing the return of a person pursuant to an extradition treaty may prosecute the extradited person only for the crime or crimes named in the surrendering country's extradition grant.").

50.     Because Article 22/3 was never submitted under Article 7, never considered by the extradition court when certification issued, and now supplies the culpability and punishment theory in the operative Turkish indictment, T.C.'s continued custody and threatened surrender on the existing certification violate § 3184 and the Treaty.

**COUNT II**
**Violation of Article 16 of the Treaty and the Rule of Specialty**

51.     T.C. re-alleges and incorporates paragraphs 1 through 50 as if fully set forth herein.

52.     Article 16 of the Treaty provides that a person extradited under the Treaty shall not be "prosecuted, punished or detained for the enforcement of a sentence" for an offense committed before surrender "other than that for which extradition was granted," unless an exception applies. Treaty, art. 16(1). When the requesting state seeks consent for prosecution or punishment outside the extradition grant, Article 16(2) requires compliance with Article 7.

53.     Thus, Article 16 protects against prosecution, punishment, detention for enforcement of sentence, and other restrictions on personal freedom beyond the offense for which extradition was granted. It therefore applies even where the added provision is characterized as an aggravating provision or sentencing enhancement.

54.     The certification in this case granted extradition on the Article 85/2 offense as

presented in the original extradition request, subject to Article 31/3's age based reduction. The extradition court understood the maximum exposure to be up to ten years. It did not certify extradition for an Article 22/3 conscious recklessness theory or for the one-third to one-half punishment increase now sought.

55. The rule of specialty prevents a requesting state from obtaining extradition on one basis and then prosecuting or punishing the extradited person on another. *See United States v. Rauscher*, 119 U.S. 407, 430 (1886). Specialty is especially important where the later prosecution changes the punishment the requested state had reason to believe was contemplated. See *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007).

56. The magistrate judge denied reopening on the ground that Article 22/3 is not an independent offense. That conclusion misreads Article 16. Article 16 is triggered by prosecution or punishment beyond "that for which extradition was granted." The relevant question is not whether Article 22/3 is called a separate offense under Turkish law, but whether the prosecution and punishment Turkey now seeks fall within the offense and punishment for which extradition was granted. They do not.

57. Because Turkey failed to submit its Article 22/3 charge and punishment theories pursuant to Article 16 and Article 7 procedure, the existing certification from 15 months ago cannot lawfully support T.C.'s surrender on the March 10, 2026 indictment.

**COUNT III**
**Lack of probable cause for the Article 22/3 conscious-recklessness theory.**

64. T.C. re-alleges and incorporates paragraphs 1 through 57 as if fully set forth herein.

65. Under § 3184, the extradition court must determine whether the evidence is sufficient to sustain "the charge." When the operative charge and punishment theory change after certification, the court must determine whether competent evidence supports the charge as now

13

framed.

66. The original certification found probable cause for ordinary recklessness under Article 85/2. It did not find probable cause that T.C. acted with conscious recklessness under Article 22/3. It did not determine whether T.C. foresaw the result, as Article 22/3 requires, and nevertheless proceeded without desiring it.

67. The distinction is material. Ordinary recklessness or negligence is not the same as conscious recklessness.[4] Article 22/3 requires proof that "the result is foreseen but is not desired." That language requires more than proof that a driver exceeded a speed limit or drove imprudently. It requires a basis to conclude that T.C. foresaw the fatal and injurious result that occurred.

68. The March 10, 2026 indictment alleges that T.C. drove above the speed limit, was warned by passengers to slow down, and collided with ATV riders near a dark roadway. But the record also included facts negating foreseeability and causation: the ATV had broken down; the individuals were stopped on or near an unlit, narrow, two-lane road at night near a curve; and the Turkish investigative materials attributed secondary fault to the ATV drivers. These facts were central to whether T.C. consciously foresaw the result charged under Article 22/3.

69. The magistrate judge did not reopen the hearing, did not permit T.C. to contest the new Article 22/3 theory on a developed record, and did not conduct a separate probable cause inquiry. Instead, the court concluded that because the facts previously supported ordinary recklessness, "the result was easily foreseen." Exhibit 2 at 7.

70. That conclusion collapses ordinary recklessness into conscious recklessness. If speed

---

[4] "Conscious recklessness" requires a mental state far more culpable than ordinary recklessness; it approaches "a state of mind approximating actual intent," *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 521 (E.D.N.Y. 2025) (internal citation and quotations omitted), and requires "disregard [of] a risk of harm of which [the defendant] is aware." *United States v. Alford*, 764 F. Supp. 3d 191, 242 (M.D. Pa. 2025) (emphasis in original).

and passenger warnings automatically establish that a fatal collision with disabled ATV riders standing near a dark curve was consciously foreseen, Article 22/3 adds nothing to Article 85/2. But Turkey's own indictment treats Article 22/3 as a separate aggravating basis and requests an increased sentence because of it.

71. The extradition court's probable cause finding is also procedurally deficient. Probable cause must be assessed as to the charge for which extradition is sought and the certification granted. T.C. never had an opportunity at the extradition hearing to contest Article 22/3 because Article 22/3 was not part of the request. The government cannot cure that omission by asking the court after certification to repurpose findings made under a different culpability standard. *See e.g., Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); C*f. In re Kates*, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012) ("if the [] plaintiff prevailed in the prior proceeding on a claim requiring a less rigorous level of scienter than that required under the willful and malicious standard of § 523(a)(6), issue preclusion is not available to the plaintiff.").

72. Because no finding was made as to the specific conscious recklessness theory before certification, and because the denial's alternative probable cause finding rests on an erroneous conflation of ordinary recklessness and conscious recklessness, *habeas* relief is warranted.

## COUNT IV
### Violation of due process

73. T.C. re-alleges and incorporates paragraphs 1 through 72 as if fully set forth herein.

74. Extradition proceedings must comply with the governing statute, the Treaty, and basic due process. A relator must have notice of the offense and punishment for which extradition is sought and a meaningful opportunity to contest treaty compliance and probable cause.

15

75. T.C. had no opportunity at the extradition hearing to contest Article 22/3 because Turkey had not submitted Article 22/3. He had no opportunity to address the March 10, 2026 indictment because it did not yet exist. He had no opportunity to challenge the proposition that the charged result was consciously foreseen because the original case was litigated and certified under Article 85/2 without Article 22/3.

76. The denial of reopening leaves T.C. exposed to surrender on a new indictment without the judicial hearing § 3184 requires. *See Apprendi*, 530 U.S. at 490.

77. That process undermines the statutory division of responsibility. The Secretary of State may decide whether to surrender a person after certification, but the Secretary does not replace the court's obligation to determine whether the Treaty has been satisfied and whether the evidence sustains the charge. *Aguasvivas*, 984 F.3d at 1050, 1055-58.

78. The magistrate judge's doubt about authority to reopen demonstrates the need for *habeas* relief. If the extradition court believed it lacked authority to ensure that its own certification still matched the prosecution Turkey now seeks, then *habeas* is necessary to prevent the certification from being used beyond its lawful scope.

79. Accordingly, continuing to detain and surrender T.C. without a judicial determination on the operative indictment violates due process, § 3184, and the Treaty.

## REQUEST FOR STAY OF EXTRADITION

80. T.C. respectfully requests that this Court stay extradition pending resolution of this petition and any appeal. The Government has informed undersigned counsel that the State Department will not extradite T.C. while a stay motion is pending after the filing of a § 2241 petition. However, the Government further stated that, if a stay is denied, the State Department considers itself free to extradite T.C. before this § 2241 petition is resolved.

16

81. A stay is necessary to preserve the Court's jurisdiction and prevent irreparable harm. Once T.C. is surrendered to Turkey, his challenge to the lawful scope of the certification and the March 10, 2026 indictment will be effectively mooted. The harm is irreversible.

82. T.C. has a substantial likelihood of success because his claims fall within the traditional scope of extradition *habeas* review and the March 10, 2026 indictment was not before the extradition court at certification, he had no opportunity to contest probable cause for the aggravated *mens rea* theory, and Article 22/3 was not submitted under Article 7.

83. The balance of equities favors a stay. A temporary stay preserves the *status quo* and allows this Court to decide whether the certification may be used to surrender T.C. on an aggravated offense and punishment theory. By contrast, surrender before judicial review would permanently deprive T.C. of meaningful relief.

84. The public interest favors treaty compliance, orderly extradition procedure, and preservation of the court's *habeas* jurisdiction. The public interest is not served by surrendering a United States citizen on a certification that may not correspond to the operative foreign indictment.

## PRAYER FOR RELIEF

**WHEREFORE**, Petitioner T.C. respectfully requests that this Honorable Court:

A.     Stay T.C.'s surrender to Turkey pending resolution of this petition and any appeal;

B.     Grant the writ of *habeas corpus*;

C.     Declare that the February 11, 2025 certification cannot lawfully authorize T.C.'s surrender on the March 10, 2026 indictment to the extent Turkey seeks prosecution or punishment based on Article 22/3 without compliance with Article 7 and Article 16;

D.     Vacate, or alternatively hold unlawful as applied, the May 18, 2026 denial of reopening insofar as it permits surrender on the post-certification indictment without a renewed §

17

3184 determination;

E.      Remand to the extradition court with instructions to reopen the extradition proceedings and determine whether the March 10, 2026 indictment satisfies Article 7, Article 16, and probable cause under § 3184;

F.      Enjoin Respondents from surrendering T.C. unless and until a court has determined that the operative Turkish indictment and Article 22/3 theory satisfy the Treaty and § 3184; and

G.      Grant such other and further relief as this Court deems just and proper.

### ORAL ARGUMENT REQUESTED

Petitioner T.C. respectfully requests oral argument on his Petition.

Respectfully Submitted,

T.C.,
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, May 22, 2026 and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.

19