UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.C. <br><br>     *Petitioner*, <br><br>         *v.* <br><br> DENNIS MATULEWICZ, Acting United States Marshal, District of Massachusetts, and <br><br> SAKO LONG, Regional Director, Northeast Region, Commonwealth of Massachusetts Department of Youth Services, <br><br>     *Respondents*. | Docket No. 26-cv-12336 |

**MOTION TO STAY EXTRADITION PENDING RESOLUTION OF PETITION FOR WRIT OF HABEAS CORPUS AND ANY APPEAL**

Petitioner T.C., by and through undersigned counsel, respectfully moves this Honorable Court for an immediate stay of his surrender to the Republic of Turkey pending resolution of his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and any appeal.[1] As set forth in the accompanying Petition, a stay is necessary to preserve this Court's jurisdiction and to prevent T.C. from being extradited before this Court can decide whether the existing February 11, 2025 extradition certification may lawfully be used to surrender him on Turkey's materially different March 10, 2026 indictment.

The Government has informed undersigned counsel that the State Department will not extradite T.C. while a stay motion is pending after the filing of a § 2241 petition. The Government has further stated, however, that if a stay is denied, the State Department considers itself free to

---

[1] T.C. is currently in the custody of the Massachusetts Department of Youth Services. His mother, Eylem Tok, is likewise in custody at the Wyatt Detention Center.

1

extradite T.C. before this Court resolves the § 2241 petition.

## I.    BACKGROUND

On February 11, 2025, the extradition court certified T.C. as extraditable based on Turkey's original request, which sought prosecution for reckless killing and injury under Turkish Penal Code Article 85/2, subject to the juvenile age reduction under Article 31/3. *See In re Extradition of T.C.*, No. 24-mj-01365-DLC, Dkts. 5-1 and 70-1 (D. Mass.). The Treaty materials did not invoke Article 22/3, did not provide the text of Article 22/3, did not allege conscious recklessness as the charging theory, and did not request the one-third to one-half punishment increase that Article 22/3 supplies. *See* Dkt. 1-1.

The extradition court's certification accordingly did not address Article 22/3. The court understood the case as involving Article 85/2, as reduced by Article 31/3, and stated that T.C. "would appear to be subject to up to ten years imprisonment under Turkish law." *In re Extradition of T.C.,* No. 24-mj-01365-DLC, Dkt. 157 at 18-20. (D. Mass.)

After certification, Turkey issued a formal indictment dated March 10, 2026. *See* Dkt. 1-1. The indictment identifies the charged offense as causing death or injury with conscious recklessness, lists Articles 85/2, 22/3, and 31/3 as the operative provisions, and expressly asks the Turkish trial court to increase the sentence by one-third to one-half because the act was committed with conscious recklessness. *Id.*

T.C. moved to reopen the extradition hearing and for reconsideration of certification, arguing that the March 10, 2026 indictment materially changed the operative offense and punishment theory, that Article 22/3 had not been presented under Article 7 of the Treaty,[2] that

---

[2] Article 7(1)(e) of the Treaty unequivocally obligates the requesting state to provide "[t]he text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal

Article 16 and the rule of specialty required renewed treaty compliance and consent, and that no court had found probable cause as to conscious recklessness. *See In re Extradition of T.C.*, No. 24-mj-01365-DLC, Dkt. 177 (D. Mass.)

On May 18, 2026, the extradition court denied that motion. The court questioned whether it had authority to consider the motion because certification had issued approximately 15 months earlier. It then held that Article 22/3 was not an independent offense, analogized it to a domestic sentencing enhancement, concluded that no probable cause or consent inquiry was required, and alternatively found that the existing probable cause record supported conscious recklessness. *See* Dkt. 1-2.

T.C. has now filed a new § 2241 petition challenging the continued use of the February 11, 2025 certification to authorize surrender on the materially different March 10, 2026 indictment. This motion seeks only to preserve the *status quo* while the Court adjudicates that petition and any appeal.

## II.     LEGAL STANDARD

A *habeas* petition is the sole means for T.C. to challenge adverse rulings. *See Wright v. Henkel*, 190 U.S. 40, 62 (1903) (recognizing habeas corpus as an appropriate mechanism to contest extradition); *Hooker v. Klein*, 573 F.2d 1360, 1364 (9th Cir. 1978) ("Because a finding of extraditability is not subject to direct appeal . . . collateral review is possible only through a writ of habeas corpus."). If T.C. is extradited before this Honorable Court considers his *habeas* petition, his claims will become moot depriving him of the opportunity for meaningful judicial review. *See In re Extradition of Hilton*, No. 13-7043-JCB, 2013 WL 3282864, at *3 (D. Mass. June 26, 2013).

Courts consider the traditional stay factors in deciding whether to preserve the status quo

---

proceedings or the enforcement of the penalty for the offense." Treaty, art. 7(1)(e). That did not occur here.

pending judicial review: (1) likelihood of success on the merits, (2) irreparable injury absent a stay, (3) substantial injury to the opposing party, and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 426, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). Those factors support a stay here.

### III.    ARGUMENT

### 1.    A stay is necessary to prevent irreparable harm.

Irreparable harm is clear. If T.C. is surrendered to Turkey before this Court resolves the petition, his challenge to the lawful scope of the extradition certification and the March 10, 2026 indictment will be effectively mooted. Once surrendered, this Court's ability to provide meaningful relief will be severely impaired, if not extinguished. That risk is not speculative. The Government has stated that the State Department will not extradite T.C. while this stay motion is pending, but that if a stay is denied, the State Department considers itself free to extradite him before the § 2241 petition is resolved. Without a stay, the Court may lose the practical ability to decide the petition before T.C. is surrendered. A stay is therefore necessary to preserve the Court's *habeas* jurisdiction and the effectiveness of any eventual relief.

In the related case involving T.C.'s mother, Elyem Tok, the District of Rhode Island granted a stay pending appeal on her separate Fourth and Fifth Amendment claims. *Tok v. Nessinger*, Docket No. 25-cv-371-MRD-PAS, ECF No. 47 at 2-5. The court had "no reservation" finding that, absent a stay, Ms. Tok "would be irreparably injured" because if she were extradited during the pendency of the appeal, "the appeal will become moot." *Id*. at 3. The court also found that the Government "failed to explain why a 'delay' would injure the United States, Türkiye, or any other interested party," and cautioned that any interest in prompt resolution "should not come at the expense of [a] Petitioner's Constitutional and procedural rights." *Id.* at 4.

**2. T.C. has a substantial likelihood of success, or at minimum presents serious questions going to the merits.**

T.C.'s petition falls within the core scope of extradition *habeas* review. A *habeas* court may review whether the extradition court had jurisdiction, whether the charged offense falls within the treaty, whether the treaty's requirements were met, and whether competent evidence supported probable cause. *Aguasvivas v. Pompeo*, 984 F.3d 1047, 1055-58 (1st Cir. 2021). In *Aguasvivas*, the First Circuit affirmed habeas relief where the government's submission failed to supply the documents the treaty required. This case presents similar questions.

First, Article 7 of the Treaty required Turkey to submit the legal provisions defining the offense and prescribing the punishment before certification. Article 22/3 was not part of the original Treaty submission, was not presented to the extradition court, and was not addressed in the certification. Yet Article 22/3 now supplies both a new culpability theory – conscious recklessness, requiring foresight of the result – and a one-third to one-half punishment increase. A certification issued without that provision cannot authorize surrender on an indictment that now makes Article 22/3 operative.

Second, Article 16 and the rule of specialty prohibit prosecution or punishment for an offense other than that for which extradition was granted unless the Treaty's consent procedures and Article 7 are followed. The relevant question is not merely whether Article 22/3 is labeled an independent offense under Turkish law. The question is whether the prosecution and punishment Turkey now seeks are the same prosecution and punishment that were presented under Article 7 and certified under 18 U.S.C. § 3184. They are not. *See United States v. Rauscher*, 119 U.S. 407, 421(1886) ("If the proceedings under which the party is arrested in a country where he is peaceably and quietly living, and to the protection of whose laws he is entitled, are to have no influence in limiting the prosecution in the country where the offense is charged to have been committed, there

is very little use for this particularity in charging a specific offense, requiring that offense to be one mentioned in the treaty, as well as sufficient evidence of the party's guilt to put him upon trial for it"); *United States v. Stokes*, 726 F.3d 880, 885 (7th Cir. 2013) ("a nation securing the return of a person pursuant to an extradition treaty may prosecute the extradited person only for the crime or crimes named in the surrendering country's extradition grant.").

Third, no court made a probable cause determination as to the specific conscious-recklessness theory now charged. The original certification found probable cause for ordinary recklessness under Article 85/2. Now, however, Article 22/3 requires that the result was foreseen but not desired.[3] The March 10, 2026 indictment therefore required a renewed judicial determination of whether competent evidence supported the charge as now framed. A prior probable cause finding under a lesser culpability theory cannot simply be repurposed after certification to support surrender on a materially different aggravated *mens rea* theory. *See e.g., Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); C*f. In re Kates*, 485 B.R. 86, 103 (Bankr. E.D. Pa. 2012) ("if the [] plaintiff prevailed in the prior proceeding on a claim requiring a less rigorous level of scienter than that required under the willful and malicious standard of § 523(a)(6), issue preclusion is not available to the plaintiff.").

Fourth, the extradition court's doubt about its own authority to reopen underscores the need for *habeas* review. The March 10, 2026 indictment did not exist when certification issued. Where

---

[3] "Conscious recklessness" requires a mental state far more culpable than ordinary recklessness; it approaches "a state of mind approximating actual intent," *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 521 (E.D.N.Y. 2025) (internal citation and quotations omitted), and requires "disregard [of] a risk of harm of which [the defendant] is aware." *United States v. Alford*, 764 F. Supp. 3d 191, 242 (M.D. Pa. 2025) (emphasis in original).

a new extradition related argument becomes available after certification, the proper course is to allow the extradition court or *habeas* court to consider whether the certification remains lawful considering the new development. *See Skaftouros v. United States*, 667 F.3d 144, 153 n.13 (2d Cir. 2011) (explaining that when a new extradition related argument was unavailable at the time of the original *habeas* filing, the proper course is either to amend the petition or "to move in the original extradition court to reopen the extradition proceedings and reconsider the extradition order in light of the newly available argument").

At minimum, these issues present serious questions going to the merits and warrant preservation of the *status quo* while the Court decides the petition.

### 3. The balance of equities favors a stay.

The requested stay would preserve the *status quo* and allow orderly judicial review. It would not vacate the certification, decide the merits of the petition, or prevent the Government from opposing *habeas* relief. It would ensure that T.C. is not surrendered before this Court decides whether the certification may lawfully be used to extradite him on the March 10, 2026 indictment. By contrast, denying a stay would expose T.C. to immediate surrender and would risk permanently depriving him of meaningful *habeas* review. The equities therefore strongly favor a stay.

### 4. The public interest supports preserving judicial review and treaty compliance.

Finally, the public interest favors a stay. The public has a strong interest both in the United States honoring its treaty obligations and in ensuring that extradition occurs only in accordance with the treaty, the governing charging documents, and the certification entered by the extradition court. Public interest is not served by a premature surrender that could deprive T.C. of meaningful judicial review of a substantial treaty-based objection.

## IV.    CONCLUSION

For the foregoing reasons, T.C. respectfully requests that this Honorable Court stay his surrender to the Republic of Turkey pending resolution of his § 2241 petition and any appeal, and grant such other and further relief as this Court deems just and proper.

### COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel has conferred with counsel for the Government, who opposes this request.

### ORAL ARGUMENT REQUESTED

Petitioner T.C. respectfully requests oral argument on his request.

Respectfully Submitted,

T.C.,
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this document was served on all counsel of record this day, May 22, 2026 and with the United States District Court, District of Massachusetts, 1 Courthouse Way, Boston, 02210.

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.

9