# Exhibit A

DECLARATION OF TOM HEINEMANN

I, Tom Heinemann, declare and say as follows:

1. I am an Attorney Adviser in the Office of the Legal Adviser for the Department of State, Washington, D.C. This office has responsibility for extradition requests, and I am charged with the extradition case of �switch ▔ ▁ I make the following statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

2. The relevant and applicable treaty provisions in full force and effect between the United States and the Republic of Türkiye which apply to this case are found in the Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States and Turkey, signed on June 7, 1979 (the "Treaty"). A copy of the Treaty is attached to this declaration.

3. Pursuant to the provisions of the Treaty, the Embassy of the Republic of Türkiye submitted Diplomatic Note No. Z-2024/95505191/37936255, dated April 3, 2024, formally requesting the extradition of ▔▔▔▔ A copy of the diplomatic note is attached to this declaration.

4. In accordance with Article 19 of the Treaty, the Government of the United States of America provides legal representation in the United States courts for the Republic of Türkiye in its extradition requests, and the Republic of Türkiye provides legal representation in its courts for extradition requests made by the United States.

5. The offense for which extradition is sought is covered by Article II of the Treaty.

6. The documents submitted by the Embassy of the Republic of Türkiye in support of its extradition request bear the certificate or seal of the Ministry of Justice. The documents submitted by the Republic of Türkiye, therefore comply with the Treaty.

7. In addition, the documents were certified on March 26, 2024, by Jeffry L. Flake, Ambassador of the United States of America in Ankara, in accordance with Title 18, United States Code, Section 3190. Ambassador Flake, at the time of his certification, was the principal diplomatic officer of the United States in Türkiye. While not necessary, this certification also satisfies the requirements in the treaty with respect to authentication.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge

Executed in Santa Fe, New Mexico on April __15th__, 2024.

_____
Tom Heinemann

Attachments:
1. Copy of Diplomatic Notes
2. Copy of Treaty

**TURKISH EMBASSY**
WASHINGTON, D.C.

L/LEI

2024 APR 10 P 4: 29

DEPARTMENT OF STATE

Z-2024/95505191/37936255 - MOST URGENT

    The Embassy of the Republic of Türkiye presents its compliments to the Department of State, and with reference to the Embassy's Note No. 37775630, dated March 22, 2024 concerning the request for extradition of     T.C.    has the honor to enclose herewith the certified originals of the supporting documents.

    The Embassy of the Republic of Türkiye avails itself of this opportunity to renew to the Department of State the assurances of its highest consideration.



April 3, 2024

Encl.: As stated.

**U.S. Department of State**
Office of the Legal Adviser for Law
Enforcement and Intelligence (L/LEI)

**U.S. Department of Justice**
Office of International Affairs (OIA)

# TURKEY

## Extradition and Mutual Assistance in Criminal Matters

*Treaty signed at Ankara June 7, 1979;*
*Transmitted by the President of the United States of America to the Senate August 2, 1979 (S. Ex. AA, 96th Cong., 1st Sess.);*
*Reported favorably by the Senate Committee on Foreign Relations November 20, 1979 (S. Ex. Rep. No. 96–18, 96th Cong., 1st Sess.);*
*Advice and consent to ratification by the Senate November 28, 1979;*
*Ratified by the President December 13, 1979;*
*Ratified by Turkey November 21, 1980;*
*Ratifications exchanged at Washington December 2, 1980;*
*Proclaimed by the President December 31, 1980;*
*Entered into force January 1, 1981.*

———

### BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

## A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition and Mutual Assistance in Criminal Matters between the United States of America and the Republic of Turkey, with Appendix, was signed at Ankara on June 7, 1979, the text of which, in the English and Turkish languages, is hereto annexed;

The Senate of the United States of America by its resolution of November 28, 1979, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty, with Appendix;

The Treaty was ratified by the President of the United States of America on December 13, 1979, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of the Republic of Turkey;

It is provided in Article 44 of the Treaty that the Treaty shall enter into force thirty days after the exchange of the instruments of ratification;

(3111)                                         TIAS 9891

SBU - LEGAL

The instruments of ratification of the Treaty were exchanged at Washington on December 2, 1980; and accordingly the Treaty will enter into force on January 1, 1981;

Now, THEREFORE, I, Jimmy Carter, President of the United States of America, proclaim and make public the Treaty, with Appendix, to the end that it shall be observed and fulfilled with good faith on and after January 1, 1981, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the seal of the United States of America to be affixed.

DONE at the city of Washington this thirty-first day of December in the year of our Lord one thousand nine hundred eighty [SEAL] and of the Independence of the United States of America the two hundred fifth.

JIMMY CARTER

By the President:
EDMUND S. MUSKIE
*Secretary of State*

TIAS 9891

SBU - LEGAL

TREATY ON EXTRADITION AND MUTUAL
ASSISTANCE IN CRIMINAL MATTERS

BETWEEN

THE UNITED STATES OF AMERICA AND THE REPUBLIC OF TURKEY

The United States of America and the Republic of Turkey, desiring to cooperate more effectively in the repression of crime by newly regulating extradition of offenders and by providing for mutual assistance in criminal matters, have decided to conclude a Treaty on Extradition and Mutual Assistance in Criminal Matters and, to that end, have appointed as their Plenipotentiaries:

Ronald I. Spiers, Ambassador of the United States of America
by the President of the United States of America,

İldeniz Divanlıoğlu, Director General of the Consular Affairs of the Ministry of Foreign Affairs
by the President of the Republic of Turkey,

Who, having communicated to each other their respective full powers, which were found in good and due form, have agreed as follows:

TIAS 9891

SBU - LEGAL

CHAPTER I
EXTRADITION

SECTION I
GENERAL PROVISIONS

ARTICLE 1

OBLIGATION TO EXTRADITE

(1)  The Contracting Parties undertake to surrender to each other, in accordance with the provisions and conditions laid down in this Treaty, all persons who are found within the territory of the Requested Party and who are being prosecuted for or have been charged with an offense, or convicted of an offense, or are sought by the other Party for the enforcement of a judicially pronounced penalty for an offense committed within the territory of the Requesting Party.

(2)  When the offense has been committed outside the territory of the Requesting Party, the Requested Party shall grant extradition subject to the provisions described in this Treaty if either:

(a)  the laws of the Requested Party provide for the punishment of such an offense committed in similar circumstances, or

(b)  the offense has been committed by a national of the Requesting Party, and that Party has jurisdiction, according to its laws, to try that person.

ARTICLE 2

EXTRADITABLE OFFENSES

(1)  Extraditable offenses, pursuant to the provisions of this Treaty, are:

TIAS 9891

SBU - LEGAL

(a) Offenses, regardless of whether listed in the Appendix to this Treaty or not, which are punishable under both the federal laws of the United States and the laws of Turkey by deprivation of liberty at least for a period exceeding one year or by a more severe penalty.

(b) Offenses listed in the Appendix to this Treaty which are punishable under both the laws of the Requesting Party and the Requested Party for at least a period exceeding one year or by a more severe penalty.

For purposes of extradition, it shall not matter whether the laws of the Contracting Parties place the offense within the same category of offenses or describe an offense by the same terminology.

(2) Extradition shall be granted in respect of an extraditable offense for the enforcement of a penalty or prison sentence, if the duration of the penalty or prison sentence still to be served amounts to at least six months.

(3) Subject to the conditions set out in paragraph (1), extradition shall also be granted:

(a) For attempts to commit, or participation as principal, accomplice or accessory in any extraditable offense;

(b) For the offense of association to commit a crime under the laws of Turkey and for conspiracy under the laws of the United States when the facts establish an offense under the laws of both Contracting Parties;

(c) For any extraditable offense when, only for the purpose of granting jurisdiction to the United States Government, transportation, transmission of persons or property, the use of mails or other means of communication or use of other means of carrying out interstate or foreign commerce constitutes an element of the specific offense.

TIAS 9891

SBU - LEGAL

(4) When a request for extradition comprises several separate offenses and extradition has been granted for one of the extraditable offenses, it shall also he granted for other extraditable offenses which could not otherwise fulfill the requirements of paragraphs (1) and (2) above as related to the deprivation of liberty to be served or duration of the penalty to be enforced in the Requesting Party.

## ARTICLE 3
### CONDITIONS OF REFUSAL

(1) Extradition shall not be granted:

(a) If the offense for which extradition is requested is regarded by the Requested Party to be of a political character or an offense connected with such an offense; or if the Requested Party concludes that the request for extradition has, in fact, been made to prosecute or punish the person sought for an offense of a political character or on account of his political opinions.

However, any offense committed or attempted against a Head of State or a Head of Government or against a member of their families shall not be deemed to be an offense of a political character.

The provisions of this paragraph shall not affect any obligation of the Contracting Parties which has already been undertaken or may subsequently be undertaken by them under any multilateral international agreement.

(b) If the offense for which extradition is requested constitutes a purely military offense which is not an offense under ordinary criminal law;

TIAS 9891

SBU - LEGAL

(c)  If the person whose surrender is sought has, under the laws of either the Requesting or the Requested Party, become immune by reason of lapse of time from prosecution or punishment for the offense for which extradition is requested;

(d)  If the person whose surrender is sought has been tried and acquitted or punished with final and binding effect in the Requested Party for the offense for which extradition is requested;

(e)  If the offense for which extradition is requested has, according to the laws of the Requested Party, been committed in its territory and has been or will be submitted to its appropriate judicial authorities for prosecution; or

(f)  If the offense for which extradition is requested has been or is subject to amnesty or pardon by either of the Parties.

(2)  Extradition may be refused in any of the following circumstances:

(a)  If the person whose surrender is sought is being prosecuted in the Requested Party for the same offense;

(b)  If the Requested Party has decided either not to prosecute or to terminate prosecution for the same offense; or

(c)  If the person whose surrender is sought has been tried and acquitted or punished in the territory of a third State for the same offense.

TIAS 9891

### ARTICLE 4
### NATIONALS

(1) Neither of the Contracting Parties shall be bound to extradite its own nationals. The competent executive authority of the United States, however, shall have the power to grant the extradition of its own nationals, if, in its discretion, this is deemed proper to do.

(2) If the Requested Party does not extradite its own national, it shall, at the request of the Requesting Perty, submit the case to its competent authorities in order that proceedings may he taken if its law so provides. If the Requested Party requires additional documents or evidence, such documents or evidence shall be submitted without charge to that Perty. The Requesting Party shall be informed of the results of its request.

(3) Requests for the surrender of persons sought for offenses committed prior to the entry into force of the present Treaty shall not be granted by the Requested Party for nationals of that Party.

### ARTICLE 5
### DETERMINATION

The right to determine the nature of the offense which entails the refusal of extradition es enumereted in Article 3 rests solely within the authority of the Requested Party.

TIAS 9891

SBU - LEGAL

## ARTICLE 6

### CHANNELS AND LANGUAGE OF COMMUNICATION

(1)  The request for extradition shall be made in writing through diplomatic channels.

(2)  The request for extradition is to be written in the language of the Requesting Party.

However, such a request and its supporting documents shall be accompanied by certified translations in the language of the Requested Party.

## SECTION II
## REQUESTS

### ARTICLE 7

### CONTENTS OF THE REQUEST

(1)  A request relating to a person being prosecuted or who is charged with an offense, and who has yet to be convicted, shall be accompanied by the following:

(a)  A warrant of arrest issued by a judge or other competent judicial officer;

(b)  A statement of the facts of the case;

(c)  Such evidence as, according to the laws of the Requested Party, would justify arrest and committal for trial of the person sought if the offense had been committed in the territory of the Requested Party;

(d)  Evidence proving that the person sought is the person to whom the warrant of arrest refers, including information, if available, on nationality; and

TIAS 9891

SBU - LEGAL

(e)  The text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense.

(2)  A request relating to a person who has been convicted but against whom there is no final judgment or sentence, shall be accompanied by the following:

(a)  The record of the judgment or conviction;

(b)  A statement of the facts of the case;

(c)  A warrant of arrest issued by a judge or other competent judicial officer;

(d)  Evidence proving that the person sought is the person to whom the judgment or conviction refers, including information, if available, on nationality; and

(e)  The text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense.

(3)  A request relating to a person against whom there is a final judgment or sentence shall be accompanied by the following:

(a)  The record of the judgment or sentence;

(b)  A statement of the facts of the case;

(c)  A warrant of arrest or detention order issued by a judge or other competent judicial officer;

(d)  A statement showing how much of the sentence has been served;

TIAS 9891

SBU - LEGAL

(e)  Evidence proving that the person sought is the person to whom the judgment or conviction refers, including information, if available, on nationality; and

(f)  The text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense.

(4)  A request relating to a person who has been convicted in his absence or in contumacy shall be accompanied by the following:

(a)  The record of the judgment or conviction;

(b)  A statement of the facts of the case;

(c)  A warrant of arrest or detention order issued by a judge or other competent judicial officer;

(d)  Such evidence as, according to the laws of the Requested Party, would justify arrest and committal for trial of the person sought if the offense had been committed in the territory of the Requested Party;

(e)  Evidence proving that the person sought is the person to whom the judgment or conviction refers, including information, if available, on nationality; and

(f)  The text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation and legal proceedings or the enforcement of the penalty for the offense.

Such convictions may be treated as final convictions if the law of the Requesting Party so provides.

TIAS 9891

SBU - LEGAL

### ARTICLE 8

### ADDITIONAL EVIDENCE AND INFORMATION

(1) If the Requested Party considers that the evidence and information submitted in support of the request for the extradition of a person is not sufficient to fulfill the requirements of this Treaty, that Party shall request necessary additional evidence and information. That Party may fix a time limit for the submission of such evidence and information and, upon the Requesting Party's application, for which reasons shall be given, may grant a reasonable extension of the time limit.

(2) If the person sought is under arrest and the additional evidence and information submitted is not sufficient, or if such evidence or information is not received within the period specified by the Requested Party, the person sought shall be discharged from custody. However, such discharge shall not prevent a subsequent request for extradition for the same offense. In this connection it shall be sufficient if reference is made in the subsequent request to the supporting documents already submitted.

### ARTICLE 9

### MEASURES TO BE TAKEN

The Contracting Parties shall take all necessary measures after the information and documents related to the request for extradition have been received, including a search for the

**TIAS 9891**

SBU - LEGAL

person sought. When located, the person sought shall be detained until the competent authorities of the Requested Party reach their decision. If the request for extradition is granted, the detention shall be continued until surrender.

### ARTICLE 10
### PROVISIONAL ARREST OR DETENTION

(1) In cases of urgency, either Contracting Party may apply for the provisional arrest or detention of the person sought before the request for extradition has been submitted to the Requested Party through diplomatic channels. The request for provisional arrest or detention may be made either through diplomatic channels or directly between the Department of Justice of the United States and the Ministry of Justice of Turkey.

(2) The application for provisional arrest or detention shall state that a warrant of arrest or a judgment exists and that it is intended to make a request for extradition. It shall also state the offense for which extradition will be requested and when and where such offense was committed and shall give all available information concerning the description of the person sought and nationality. The application shall also contain such further information, if any, necessary to justify the issuance of a warrant of arrest in the Requested Party had the offense been committed, or the person sought convicted, in that Party.

TIAS 9891

SBU - LEGAL

(3) The Requested Party shall make the necessary arrangements for the provisional arrest or detention and shall notify the other Party when the person sought has been arrested or detained specifying that the person sought will be released if the documents mentioned in Article 7 are not submitted within a period of 60 days from the date of arrest or detention.

(4) If the documents for extradition are submitted to the executive authority of the Requested Party within the 60 day time limit, the arrest or detention shall continue until a decision on the request for extradition has been reached by the competent authorities of the Requested Party. If the request for extradition is granted, the arrest or detention may be extended to the extent permitted by the laws of the Requested Party.

(5) If the person sought is released from arrest or detention because the extradition documents have not been received by the executive authority of the Requested Party within the 60 day time limit, the Requesting Party may make a new request for extradition when the documents are subsequently received.

## SECTION III
## DECISIONS

### ARTICLE 11

### DECISION ON EXTRADITION AND SURRENDER

(1) The Requested Party shall promptly communicate to the Requesting Party the decision on the request for extradition. The Requested Party shall give the reasons for any complete or partial rejection of the request for extradition.

TIAS 9891

SBU - LEGAL

(2)  If the request for extradition is granted, the competent authorities of the Contracting Parties shall agree on the time and place of surrender of the person sought.  Surrender shall take place within such time as may be prescribed by the laws of the Requested Party.

(3)  If the person sought is not removed from the territory of the Requested Party within the time required under paragraph (2), that person may be set at liberty.  The Requested Party may subsequently refuse to extradite that person for the same offense.

(4)  If circumstances beyond its control prevent a Contracting Party within the time required under paragraph (2) from surrendering or taking delivery of the person to be extradited, it shall notify the other Contracting Party before the expiration of the specified time.  In such a case the competent authorities of the Contracting Parties may agree on a new time for the surrender.

(5)  If the person sought flees prior to surrender, a new request for extradition need not be accompanied by the documents specified in Article 7 when that person is located.

### ARTICLE 12
#### CONCURRENT REQUESTS

(1)  If extradition is requested by more than one State, either for the same offense or different offenses, the Requested Party shall freely decide on these requests, taking into consideration all the circumstances and especially the nationality of the person sought, the place where the offense or offenses were committed, the seriousness of the offense or offenses and the respective dates of the requests for extradition.

TIAS 9891

SBU - LEGAL

(2) The Requested Party, while granting extradition in such a case, may authorize the Requesting Party to surrender subsequently the person sought to a third State which also requested extradition.

## ARTICLE 13

### DEFERRED SURRENDER

When the person whose surrender is sought is being prosecuted or is serving a sentence iu the territory of the Requested Party for an offense other than that for which extredition has been requested, surreeder of this person may be deferred by the Requested Party until the conclusion of the prosecution and the full execution of eny punishment that may he or may have been awerded. In this case, the Requested Perty shell inform the Requesting Party accordingly.

## ARTICLE 14

### INFORMATION ON THE RESULTS OP PROCEEDINGS

(1) The Contracting Party to which the person sought has been surrendered shall inform the other Party of the results of the criminal proceedings initiated against this person.

(2) In cese of conviction, a certified copy of the final judgment shall be trensmitted to the other Contracting Perty.

TIAS 9891

SBU - LEGAL

Case 1:26-cv-12336-ADB    Document 12-1    Filed 06/11/26    Page 21 of 44

## ARTICLE 15

### DELIVERY OF PROPERTY AND VALUABLES

(1)  Upon the request of the Requesting Party, the Requested Party, subject to its laws and the interests of third parties, shall seize and deliver the following property and valuables:

(a)  Property which has been used in committing the crime or which may be required as evidence;

(b)  Property and valuables which have been acquired as a result of the offense and were found in the possession of the person sought at the time of arrest or detention, or which are discovered subsequently;

(c)  Articles subsequently acquired from the property and valuables connected with the offense.

(2)  If possible, the property specified in paragraph (1) shall be delivered to the Requesting Party at the same time as the surrender of the person extradited.  Property and valuables seized under paragraph (1) shall be delivered even if extradition already granted cannot be carried out owing to the death or escape of the person sought.

(3)  The said property and valuables can be temporarily retained for proceedings pending in the territory of the Requested Party or they can be delivered under the condition of restitution.

(4)  However, the rights of the Requested Party or a third State concerning the said property and valuables are reserved. Where there are such rights, the property and valuables shall be returned to the Requested Party free of charge and as soon as possible after the proceedings.

SBU - LEGAL

SECTION IV
SPECIAL PROVISIONS

ARTICLE 16

RULE OF SPECIALITY

(1) A person who has been extradited in accordance with the present Treaty shall not be prosecuted, punished or detained for the enforcement of a sentence or subjected to any other restriction on personal freedom or delivered to a third State for any offense committed prior to surrender from the territory of the Requested Party other than that for which extradition was granted, except in the following cases:

(a) If the person extradited, having had for a period of 60 days from the date of final release an opportunity to leave the territory of the Party to which the person has been surrendered still remains in the territory of that Party. This period does not include the time during which the released person could not voluntarily leave the territory of that Party;

(b) If, after having left, the person has returned voluntarily to the territory of the Party to which surrender was granted; or

(c) If there is an express consent of the Requested Party.

(2) When the consent of the Requested Party is requested for the purposes of prosecution or for the execution of a sentence concerning an offense committed prior to the surrender other than that for which extradition was granted, the Requesting Party shall comply with the procedure provided in Article 7 of the present Treaty, and provide a record established by a judge or competent officer of the statement made by the extradited person in respect of the request for consent.

TIAS 9891

## ARTICLE 17
### RE-EXTRADITION TO A THIRD STATE

(1) Except as provided in Article 16, paragraph (1), the Requesting Party shall not, without the consent of the Requested Party, re-extradite to a third State a person extradited to the Requesting Party and sought by the third State for an offense committed prior to surrender.

(2) A request for consent to re-extradition to a third State shall be accompanied by the documents supporting the request for extradition made by the third State, if the Requested Party requires these documents for its decision. These documents shall conform to the documents mentioned in Article 7 of this Treaty.

## ARTICLE 18
### TRANSIT

(1) The transit of a person who is the subject of extradition from a third State through the territory of one Contracting Party to the territory of the other Contracting Party shall be granted upon submission of a request, provided the offense involved is an extraditable offense under Article 2 and that the Contracting Party requested to permit transit does not consider the offense to be one covered by Article 3.

The request for transit shall be accompanied by a copy of a warrant of arrest, final judgment or detention order. In addition, the request shall contain a statement as mentioned in Article 7.

**TIAS 9891**

SBU - LEGAL

(2) The Requested Party shall not be bound to permit the transit of its nationals, nor persons who may be prosecuted or required to serve a sentence in its territory.

(3) If air transport is to be used, the following provisions shall apply:

(a) When no intermediate stop is scheduled, the Contracting Party shall notify the other Contracting Party that transit will occur, certify that a warrant of arrest, final judgment or detention order exists and state the name and nationality of the person in transit.

(b) When an unscheduled landing occurs, notification as provided in (a) shall have the effect of a request for provisional arrest as provided in Article 10. Thereafter, a request for transit as provided in paragraph (1) shall be made.

(c) When an intermediate stop is required, the Contracting Party requesting transit shall submit a request as provided in paragraph (1).

(4) If the circumstances require detention pending transit, the Contracting Party requesting transit may be required to follow the provisions of Article 10.

## ARTICLE 19
### ADMINISTRATIVE MATTERS

(1) Expenses in the territory of the Requested Party for processing the extradition request for the person sought shall be borne by that Party until surrender. The expenses after surrender shall be borne by the Requesting Party.

TIAS 9891

SBU - LEGAL

(2)  The expenses incurred by reason of transit shall be borne by the Requesting Party.

(3)  Documents submitted as required by Article 7 shall be admitted into evidence by the courts of the Requested Party provided they are sealed with the official seal of the Department of State of the United States or the Ministry of Justice of Turkey and are otherwise in compliance with the laws of the respective Parties.

(4)  The appropriate legal officers of the Requested Party shall, by legal means provided under its laws, assist the Requesting Party before its respective judicial authorities.

## CHAPTER II
## MUTUAL ASSISTANCE IN CRIMINAL MATTERS

### SECTION I
### GENERAL PROVISIONS

#### ARTICLE 20

#### MUTUAL ASSISTANCE

The Contracting Parties undertake to afford each other, in accordance with the provisions of Chapter II of this Treaty, mutual assistance in criminal matters.

#### ARTICLE 21

#### SCOPE OF ASSISTANCE

(1)  Each of the Contracting Parties may submit to the other Party requests for assistance in criminal matters.

**TIAS 9891**

SBU - LEGAL

(2) Criminal matters for which mutual assistance shall be afforded include investigations and criminal proceedings in respect of offenses, the punishment of which falls or would fall within the jurisdiction of the judicial authorities of the Requesting Party under its law.

(3) Mutual assistance shall include:

(a) Execution of requests related to criminal matters;

(b) Effecting the taking of testimony or statements of persons;

(c) Effecting the production, preservation and authentication of documents, records, or articles of evidence;

(d) Effecting the return to the Requesting Party of any objects, articles or other property or assets belonging to it or obtained through such offenses;

(e) Service of all judicial documents, writs, summonses, records of judicial verdicts and court judgments or decisions;

(f) Effecting the appearance of a witness or expert before a court of the Requesting Party;

(g) Location of persons; and

(h) Providing judicial records, evidence and information.

(4) For the purposes of Chapter Il of this Treaty, punishment of an offense is within the jurisdiction of the judicial authorities of the Requesting Party if the offense is deemed by its laws to have been committed in the territory of that Party, or, if committed outside the territory, the laws of the Requesting Party provide for prosecution of the offense.

TIAS 9891

## ARTICLE 22
### REFUSAL OF MUTUAL ASSISTANCE

(1) Judicial assistance may be refused:

(a) If the investigation or proceedings concerns:

(i) an offense which the Requested Party considers to be a political offense or an offense connected with a political offense; or

(ii) a purely military offense which does not constitute an offense under ordinary criminal law.

(b) If the Requested Party considers that execution of the request is likely to prejudice its sovereignty, security, or similar essential interests.

(2) For the purposes of Chapter II of this Treaty, the following offenses shall not be considered political offenses or offenses connected with a political offense:

(a) Offenses for which investigations and proceedings are obligatory for the Contracting Parties under multilateral international agreements; and

(b) Offenses against a Head of State or a Head of Government or members of their families.

## ARTICLE 23
### SCOPE OF USE

(1) Use of any testimony, statements, documents, records or articles of evidence obtained by the Requesting Party under Chapter II, Section I, is limited to the purposes of investigations or criminal proceedings and adjudications of claims for damages connected with the offense which is the subject of the investigation or proceedings in the Requesting Party.

TIAS 9891

SBU - LEGAL

(2)  Furthermore, the material mentioned in paragraph (1) above may also be used in an investigation or prosecution relating to an offense other than the offense for which assistance was granted, provided the purpose falls within the scope of Chapter II Section I.

SECTION II
REQUESTS

ARTICLE 24

CONTENTS OF REQUESTS

(1)  A request for the taking of testimony or statements of persons, or for effecting the production, preservation and authentication of documents, records, or articles of evidence shall specify the name of the authority conducting the investigation or proceedings to which the request relates and, insofar as possible, shall also indicate:

(a)  the subject matter and nature of the investigation or proceeding;

(b)  the principal need for the evidence or information sought;

(c)  the full name, place and date of birth, address and any other available information, such as nationality, which may aid in the identification of the person or persons who are the subjects of the investigation or proceeding;

(d)  the name, address and nationality of the person whose testimony or statement is sought, or from whom documents, records or articles of evidence are requested; and

(e)  a description of the documents, records or articles of evidence to be produced or preserved, and of the manner in which they should be reproduced and authenticated.

TIAS 9891

SBU - LEGAL

(2) The requests, insofar as possible and to the extent necessary, shall also include:

(a) a description of the particular procedure to be followed, if any;

(b) a statement as to whether sworn or affirmed testimony or statements are required; and

(c) a description of the information, statement or testimony sought.

## ARTICLE 25
### EXECUTION OF REQUESTS

(1) Except as otherwise provided in this Chapter, requests shall be executed in accordance with the usual procedure under the laws of the Requested Party.

(2) The Requested Party may consent to a request to apply the procedure of the Requesting Party, to the extent that such procedures are not incompatible with the laws of the Requested Party.

(3) A person in the Requested Party from whom evidence is sought shall be bound to testify and produce documents, records, or articles of evidence in the same manner and to the same extent as in criminal investigations or proceedings in the Requested Party, unless such person has a right to refuse to do so under the laws of that Party.

(4) The appropriate judicial officers and other officials of the Requested Party shall use all means within their power under the laws of the Requested Party to execute requests. When the execution of a request requires judicial actions, the officials of the Requested Party shall present the requests to the appropriate court at no expense to the Requesting Party.

**TIAS 9891**

SBU - LEGAL

(5) On the express request of the Requesting Party, the Requested Party shall state the date and place of execution of the request. Under the requirements and provisions of the laws of either Party, appropriate officers of the Requesting Party, or other interested persons, may be present at the execution of the requests.

## ARTICLE 26

### RECORDS AND DOCUMENTS IN POSSESSION OF CONTRACTING PARTIES

Upon request, the Requested Party shall provide to the Requesting Party, on the same conditions and to the same extent as they would be available to authorities performing comparable functions in the Requested Party, the original or certified copies of:

(a) Judgments and decisions of courts, and

(b) Documents, records, and articles of evidence, including transcripts and official summaries of testimony, contained in the files of a court or investigative authority, if the Requested Party determines it is appropriate.

## ARTICLE 27

### SEARCHES AND SEIZURES OF PROPERTY AND ARTICLES

When the request seeks the handing over of any property or articles to be used in a criminal investigation or proceeding, and when this requires the execution of a search warrant, a search and seizure shall be made only in accordance with the laws of the Requested Party.

TIAS 9891

SBU - LEGAL

## ARTICLE 28

### DELIVERY AND RETURN OF DOCUMENTS, RECORDS, OR ARTICLES OF EVIDENCE

(1) The Requested Party may postpone the delivery of original documents or records, or articles of evidence requested if they are needed in connection with pending proceedings by the Requested Party.

(2) Any original documents, records or articles of evidence delivered in execution of requests shall be returned by the Requesting Party to the other Party as soon as posaihle unless the Requested Party waives their return.

(3) However, the competent authority of the Requesting Party shall be entitled to retain articles for disposition in accordance with its laws if such articles belong to persons in that Party and no title or other secured rights are claimed by a person in the Requested Party.

### SECTION III
### SERVICE OF DOCUMENTS

### ARTICLE 29

### REQUESTS FOR SERVICE OF DOCUMENTS

(1) A request for the service of documents, including court judgments, records of verdicts, writs, summonses or other documents which are transmitted to the Requested Party, shall include:

(a) the name of the authority requesting service;

(b) the name, address, and, if known, nationality of the person to be served; and

(c) the approximate allowances, travel and subsistence expenses payable to the witness or expert whose appearance is sought in the Requesting Party.

TIAS 9891

SBU - LEGAL

(2) If the Requesting Party specifies in its request of service a date for any personal appearance, it should take into consideration, when setting the date for the appearance and forwarding the request, that the request must be received by the Requested Party at least 30 days before that date.

## ARTICLE 30
### EXECUTIONS OF REQUESTS FOR SERVICE OF DOCUMENTS

(1) The Competent Authority of the Requested Party shall effect service of any document, which is transmitted for this purpose by the Competent Authority of the Requesting Party, in the manner provided by its own laws and procedure for the service of similar procedural documents.

(2) Proof of service shall be made by means of a receipt, dated and signed by the person served or by means of a declaration specifying the form and date of service and signed by the person effecting it.

(3) The Requested Party shall promptly transmit to the Requesting Party the receipt of service or the declaration.

(4) If service cannot be effected, the reasons shall be communicated to the Requesting Party with the documents sought to be served.

(5) Service of a document under this Article on a person other than a national of the Requesting Party does not confer jurisdiction in the Requesting Party.

(6) Each Contracting Party shall retain the right to serve documents on its own nationals in the Requested Party through its diplomatic or consular officials.

TIAS 9891

SBU - LEGAL

## ARTICLE 31

### APPEARANCE OF WITNESSES AND EXPERTS IN THE REQUESTING PARTY

(1) If the Requesting Party considers the personal appearance of a witness or expert before its judicial authorities especially necessary, that Party shall so indicate in its request for service of a summons. The Requested Party shall invite the witness or expert served to appear before the relevant judicial authority of the Requesting Party and ask whether the person agrees to the appearance.

The Requested Party shall promptly notify the Requesting Party of the reply of the witness or expert.

(2) A witness or expert who fails to answer a summons to appear before a judicial authority of the Requesting Party shall not, even if the summons contains a notice of penalty, be subjected to any civil or criminal forfeiture, measure of restraint or legal sanction unless subsequently the person enters the territory of the Requesting Party and is there again duly summoned.

## ARTICLE 32

### TRANSFER AND APPEARANCE OF DETAINED PERSONS

(1) If the appearance of a person held in custody is needed and requested by the Requesting Party as a witness or for purposes of confrontation before a judicial authority of that Party, the person in custody may temporarily be transferred to the territory of that Party if:

(a) The person in custody consents thereto;

(b) The transfer shall not prolong the custody; and

(c) The Requested Party determines that there are no other important reasons against the transfer.

TIAS 9891

SBU - LEGAL

(2)  Execution of the request for the transfer of the person in custody may be postponed as long as the presence of the person is necessary for an investigation or proceeding in the Requested Party.

(3)  The Requesting Party shall have the authority and obligation to keep the person in custody unless the other party authorizes release.  When no longer needed, the person in custody shall be returned as soon as circumstances permit.

(4)  The Requested Party shall not decline to return a transferred person solely because he is a national of that Party.

## ARTICLE 33

### TRANSFER OF AN ACCUSED PERSON

(1)  When, in connection with a request for assistance under this Chapter, the Requesting Party requires the transfer to the other Party of an accused person for purposes of confrontation, the request shall so state.  Upon transfer, the Requested Party shall hold him in custody as long as necessary and shall return him immediately thereafter.

(2)  If the law of the Requested Party requires proof that the Requesting Party has the accused in custody, the Requesting Party shall attach to its request any judicial orders or other documents the Requested Party requires.

(3)  On receipt of the request, the Competent Authority of the Requested Party will promptly seek from the appropriate authorities any legal process necessary to keep the accused in custody.  The Requested Party will notify the Requesting Party that custody is authorized before the transfer takes place.

TIAS 1891

### ARTICLE 34

#### SAFE CONDUCT

(1)  A witness or expert, whatever his nationality, appearing before a judicial authority in the Requesting Party pursuant to a request made under this Treaty, shall not be prosecuted or, except as provided in paragraph (3) of Article 32 or paragraph (1) of Article 33, be detained or subjected to any other restriction of personal liberty in the territory of that Party with respect to any act or conviction which preceded his departure from the territory of the Requested Party.

(2)  A person, whatever his nationality, summoned before a judicial authority in the Requesting Party to answer for acts forming the subject of proceedings against him, shall not be prosecuted or detained or subjected to any other restriction of his personal liberty for acts or convictions which preceded his departure from the territory of the Requested Party and which are not specified in the request.

(3)  The safe conduct provided in this Article shall cease if 10 days after the person receives official notification that his presence is no longer required, the person, being free to leave the territory of the Requesting Party, has not done so, or after having left, has voluntarily returned.

TIAS 9891

18-256 O - 85 - 21

SBU - LEGAL

SECTION IV
INFORMATION

ARTICLE 35

EXCHANGE OF INFORMATION

(1)  With a view to furthering the purposes of this Treaty, the authorities of either Party are authorized to furnish any information, documents, records or evidence which may he of interest to the other in pertinent matters including investigations or proceedings in either Party, to the extent permitted by their laws and under such conditions as are appropriate.

(2)  Where appropriate, the Parties will provide each other relevant information relating to their laws, regulations, statutes and international practices in criminal matters.

ARTICLE 36

RECORDS

(1)  To the maximum extent possible, the appropriate authorities of the Contracting Parties shall inform esch other of criminal convictions and subsequent measures concerning nationals of the other Party.

(2)  On request, the Parties shall provide copies of judicial records relating to criminal proceedings against a national of the Requesting Party to the same extent as those records are available to judicial authorities in the Requested Party.

TIAS 9491

### ARTICLE 37

#### LOCATION OF PERSONS

If the Requesting Party requests information as to the location of persons who are believed to be within the Requested Party, the Requested Party shall make every effort to ascertain the whereabouts and addresses of such persons in its territory. Such requests shall include all available information on identity and location.

### SECTION V
### PROCEDURE

### ARTICLE 38

#### COMPETENT AUTHORITIES

(1) The Competent Authorities under Chapter II of this Treaty shall be the Department of Justice of the United States of America and the Ministry of Justice of the Republic of Turkey.

(2) Requests under this Chapter shall be made only by the Competent Authorities and may be transmitted directly between them or through diplomatic channels.

(3) The Competent Authority of the Requested Party shall promptly transmit requests to the appropriate authorities for execution.

### ARTICLE 39

#### ACTION ON THE REQUEST

(1) If the Requested Party determines that the request for assistance is not consistent with the provisions of this Chapter or that it cannot be executed, that Party shall immediately inform the Requesting Party and specify the reasons.

TIAS 9891

(2)  Upon completion of a request for assistance, the Requested Party shall return the original request to the Requesting Party together with all the documents, information and evidence obtained.

### ARTICLE 40
### LANGUAGE

(1)  Requests for mutual assistance and all supporting documents shall be prepared in the language of the Requesting Party.

(2)  These requests and their supporting documents shall be accompanied by true and complete translations in the language of the Requested Party.

(3)  Translation of all transcripts, statements, or documents or records obtained through a request shall be incumbent upon the Requesting Party.

### ARTICLE 41
### EXPENSES

Requests under this Chapter shall be executed by the Requested Party without any expense to the Requesting Party, except for the following:

(a)  Allowances, including subsistence and travel expenses, for a witness or expert invited to appear in the Requesting Party under Article 31.  These allowances and expenses shall be calculated as from the place of residence in the Requested Party and shall be at rates equal to those provided in the schedules and rules in force in the Requesting Party;

TIAS 9891

SBU - LEGAL

(b)  Expenses involved in the transfer and return of detained persons transferred under Article 32 or Article 33; and

(c)  Fees of private experts specified by name in the request.

### CHAPTER III
### FINAL PROVISIONS

### ARTICLE 42

### TERRITORIAL APPLICATION

(1)  A reference in this Treaty to the territory of either Contracting Party is a reference to all territory under its jurisdiction.

(2)  This Treaty shall not affect obligations which the Contracting Parties have undertaken or will undertake under any multilateral international agreement.

### ARTICLE 43

### SCOPE OF EFFECT

This Treaty shall apply to offenses encompassed by Article 2 committed before and after the date this Treaty enters into force.  Extradition shall not be granted, however, for an offense committed before this Treaty enters into force which was not an extraditable offense under previous agreements.

### ARTICLE 44

### ENTRY INTO FORCE AND DENUNCIATION

(1)  The present Treaty shall be subject to ratification and the exchange of the instruments of ratification shall take place in Washington.

TIAS 9891

SBU - LEGAL

(2) The present Treaty shall enter into force 30 days after the exchange of the instruments of retification and shall remain in force indefinitely.

(3) Upon entry into force of this Treaty, the Treaty of Extradition between the United States and Turkey signed at Lausanne, Switzerland on Augnst 6, 1923,[1] shall cease to have effect, except that requests presented prior to entry into force of the present Treaty shall be processed according to the provisions of the Treaty of 1923.

(4) Either Contracting Party may denounce and terminate this Treaty by giving prior written notice to the other Party. Such denunciation shall take effect six months after the receipt of the notice.

IN WITNESS WHEREOF the respective Plenipotentiaries of the Contracting Parties have signed the present Treaty and have affixed hereunto their seals.

DONE at Ankara in duplicate, this seventh day of June, 1979, in the English and Turkish languages, both texts being equally authentic.

[2]

FOR THE GOVERNMENT OF
THE UNITED STATES OF AMERICA:

[3]

FOR THE GOVERNMENT OF
THE REPUBLIC OF TURKEY:

---

[1] TS 872 ; 49 Stat. 2692.
[2] Ronald I. Spiers.
[3] I. Divanlioğlu.

TIAS 9891

SBU - LEGAL

**APPENDIX**

1. Murder.

2. Manslaughter.

3. Aggravated wounding, injury, or assault, even when loss of life results; wounding or injuring with intent to cause grievous bodily harm.

4. Illegal abortion.

5. Kidnapping; abduction; false imprisonment; child-stealing.

6. Rape; indecent assault; incest; bigamy.

7. Unlawful sexual acts with or upon children under the age specified by the laws both of the Requesting and Requested Parties.

8. Procuration.

9. Libel.

10. Willful non-support or willful abandonment of a minor or other dependent person when by reason of such non-support or abandonment the life of that minor or other dependent person is or is likely to be endangered.

11. Robbery; larceny; burglary; embezzlment; extortion.

12. Malicious damage to property.

13. Fraud, including breach of trust and offenses against the laws relating to the unlawful obtaining of money, property or securities.

14. Offenses against the laws relating to forgery, including the making of forged documents or records, whether official or private, or the uttering or fraudulent use of documents or records.

TIAS 9891

SBU - LEGAL

15. Receiving, possessing, or transporting for personal benefit any money, valuable securities, or other property, knowing the same to have been unlawfully obtained.

16. Offenses relating to counterfeiting.

17. Perjury, including subornation of perjury; false swearing; false statements, either written or oral, made to a judicial authority or to a government agency or office.

18. Arson.

19. Unlawful obstruction of judicial proceedings or proceedings before governmental bodies or interference with an investigation of a violation of a criminal statute, by influencing, bribing, impeding, threatening, or injuring by any means any officer of the court, juror, witness, or duly authorized criminal investigator.

20. a. Unlawful abuse of official authority which results in bodily injury or deprivation of life, liberty of property of any person.

    b. Unlawful injury or intimidation in connection with, or interference with, voting or candidacy for public office, jury service, government employment, or the receipt or enjoyment of benefits provided by government agencies.

21. Facilitating or permitting the escape of a person from custody; prison mutiny.

22. Offenses against the laws relating to bribery.

23. Offenses against the laws relating to civil disorders.

TIAS 9891

SBU - LEGAL

24. Offenses against the laws relating to organized criminal enterprises or associations.

25. Any act willfully jeopardizing the safety of any person traveling upon a railway or in any aircraft or vessel or other means of transportation.

26. Piracy, by statute or by the law of nations; mutiny or revolt aboard an aircraft or vessel against the authority of the captain or commander of such aircraft or vessel; any seizure or exercise of control, by force or violence, or threat of force or violence, of an aircraft or vessel.

27. a. Offenses against the laws relating to importation, exportation or transit of goods, articles, or merchandise, including smuggling.

    b. Offenses relating to willful evasion of taxes and duties.

    c. Offenses against the laws relating to international transfers of funds.

28. Offenses against the bankruptcy laws.

29. Offenses against the laws relating to narcotic drugs, Cannabis sativa L., hallucinogenic drugs, cocaine and its derivatives, and other dangerous drugs and chemicals.

30. Offenses against the laws relating to the illicit manufacture of or traffic in poisonous chemicals or substances injurious to health.

31. Offenses against the laws relating to firearms, ammunition, explosives, incendiary devices or nuclear materials.

32. Offenses against the laws relating to the sale or transportation or purchase of securities or commodities.

33. Any other act for which extradition may be granted in accordance with the laws of both Contracting Parties.

TIAS 9891

SBU - LEGAL



## U.S. Department of State

### CERTIFICATE TO BE ATTACHED TO DOCUMENTARY
### EVIDENCE ACCOMPANYING REQUISITIONS IN
### THE UNITED STATES FOR EXTRADITION
### AMERICAN FOREIGN SERVICE

Ankara, Turkiye    03-26-2024

**Place and Date** *(mm-dd-yyyy)*

Jeffry L. Flake                              Ambassador
Name                                         Title

of the United States of America at    Ankara, Turkiye

hereby certify that the annexed papers, being    extradition request, evidence and

its English translation

proposed to be used upon an application for the extradition from the United States of America

of    T.C.

charged with the crime of    causing reckless killing and injury

alleged to have been committed in    Istanbul, Turkiye

are properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by

the tribunals of the Republic of Turkiye

as required by Title 18, United States Code, Section 3190.

In witness whereof I hereunto sign my name and cause my seal of office to be affixed

the    6th    day of    March 2024

Month and Year

*Signature*

Jeffry L. Flake, Ambassador

Type Name and Title of Certifying Officer
of the United States of America.

DS-36
04-2014