UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| T.C.<br><br>    *Petitioner*,<br><br>      *v.*<br><br>DENNIS MATULEWICZ, Acting United States Marshal, District of Massachusetts, and<br><br>SAKO LONG, Regional Director, Northeast Region, Commonwealth of Massachusetts Department of Youth Services,<br><br>    *Respondents*. | Docket No. 26-cv-12336-ADB<br><br><br>(Leave to file granted on June 12, 2026) |

**PETITIONER T.C.'S REPLY IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS AND REQUEST FOR STAY OF EXTRADITION**

Petitioner T.C. respectfully submits this reply in support of his Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2241 and request for a stay of extradition.

The Government's response confirms the core defect in the certification. Article 22/3 was not cited in the extradition complaint, was not submitted with the original Treaty materials, was not included in the arrest warrant, was not addressed at the extradition hearing, and was not part of the February 11, 2025 certification. Only after certification—and, indeed, more than a year after certification—did Turkey issue a formal indictment charging T.C. with "causing death or injury with conscious recklessness," citing Article 22/3, and seeking a one-third to one-half punishment increase based on that aggravated *mens rea* theory.

That omission matters because Article 7(1)(e) of the Treaty requires the requesting state to provide "[t]he text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation

of legal proceedings or the enforcement of the penalty for the offense." Treaty, art. 7(1)(e). That requirement is not a technical formality, nor is it merely a one-year minimum penalty screen. It is the mechanism by which the extradition court determines what charge is before it, what punishment is sought, whether the Treaty applies, whether dual criminality is satisfied, and whether the evidence is sufficient to sustain the charge.

The Government's response effectively renders Article 7 meaningless so long as Article 85/2 itself carried a sufficient penalty. Under the Government's view, Turkey could omit Article 22/3, obtain certification on one culpability theory, and later proceed on a materially aggravated *mens rea* theory without renewed judicial review. That is not what Article 7 permits.

To justify that position, the Government argues that Article 22/3 is merely a "penalty enhancement that courts are not required to consider in an extradition hearing." Dkt. 12 at 8-9. But Article 22/3 does not simply perform a mathematical sentencing function, like a drug weight enhancement that leaves the underlying *mens rea* unchanged.[1] It requires a finding that "the result is foreseen but is not desired." *Id.* at 7. That is a *mens rea* determination. It is materially different from ordinary negligence or even recklessness and requires proof that the accused *foresaw* the death or injury result. *See* Declaration of Attorney Fazil Ciftci, Dkt. 11-1 ("The finding of conscious negligence requires determination that the defendant foresaw the possible occurrence of the harmful result, nevertheless engaged in the conduct in question.").[2]

---

[1] And, indeed, after *Apprendi*, a "threshold quantity must be treated as an element of an aggravated drug trafficking offense"—that is, it must be "charged in the indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156–57 (4th Cir. 2001).

[2] Even under domestic law, "[c]onscious recklessness" requires a mental state far more culpable than ordinary recklessness; it approaches "a state of mind approximating actual intent," *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 521 (E.D.N.Y. 2025) (internal citation and quotations omitted), and requires "disregard [of] a risk of harm of which [the defendant] is aware." *United States v. Alford*, 764 F. Supp. 3d 191, 242 (M.D. Pa. 2025).

Indeed, the Government's own response acknowledges that Article 22/3 requires "notice and additional factual and legal analysis before it can be applied." *Id*. at 11. If Article 22/3 requires notice and additional factual and legal analysis before it may be applied, then it could not be omitted from the Treaty submission, certified under a different culpability theory, and later added without giving T.C. a meaningful opportunity to contest it and, as important, without a new submission as required by Article 7 of the Treaty being made by Turkey to the United States Department of State and ultimately to its judiciary, *see infra* at 7-8.

Nor did the magistrate judge's alternative probable cause finding cure the problem. T.C. did not receive notice before certification that Article 22/3 was at issue. He therefore had no reason or opportunity to contest conscious recklessness as distinct from ordinary recklessness. Nor did he have an opportunity to challenge the reliability of the Government's factual assertions, including the disputed speed estimates on which the Government relies, or to present evidence and argument concerning whether he foresaw the fatal and injurious result. That distinction matters because the medical evidence—including evidence that O.M.A. was transported nearly 27 kilometers to a hospital despite closer available facilities, and that there were significant delays in admission and treatment—may have been deemed irrelevant to ordinary recklessness, but it is directly relevant to whether T.C. actually foresaw the fatal result. *See In re T.C.*, No. 24-mj-01365-DLC, Dkt. 142 at 4-6. A post-certification finding, made without reopening the hearing and without allowing T.C. to address the newly asserted *mens rea* theory is not the *due process* § 3184 requires.

The Petition should be granted, or at minimum, extradition should be stayed while the Court decides whether the existing certification may lawfully be used to surrender T.C. on a materially different indictment.

**ARGUMENT**

First, the Government repeatedly characterizes Article 22/3 as a "penalty enhancement". Dkt. 12 at 10-12. But the relevant question is whether Article 22/3 changes the facts, mental state, and punishment that must be established before T.C. may be prosecuted or punished on the March 10, 2026 indictment. It does. Article 22/3 applies only where "the result is foreseen but is not desired." Dkt 12-6 at 13. That language requires more than negligence, carelessness, or ordinary recklessness. It requires an additional culpability finding that the defendant actually foresaw the prohibited result. *See* Dkt. 11-1 ("Article 22(3) serves not only as a general sentencing enhancement applicable to negligent offenses, but also as a legal provision that alters the legal characterization of the charged conduct within the meaning of Article 226 of the Turkish Code of Criminal Procedure ("CPC"). Consequently, where the prosecution in court proceedings seeks the application of Article 22(3) under TCC, it must prove that the defendant/accused acted with conscious negligence; namely, that, at the time of engaging in the conduct constituting the offense, the defendant foresaw the possible occurrence of the harmful result.")

Turkey's indictment reflects the same point: it does not simply cite Article 85/2 and then leave punishment to the Turkish court. It charges "causing death or injury with conscious recklessness," cites Article 22/3 as an operative provision, alleges conscious recklessness, and asks the Turkish court to increase the sentence by one-third to one-half because the act was committed with conscious recklessness. Dkt. 12-6.

The Government's own response effectively concedes the materiality of Article 22/3. It states that Article 22/3 "requires notice and additional factual and legal analysis before it can be applied." Dkt. 12 at 11. But that additional notice, factual analysis, and legal analysis were absent at certification. The extradition court certified extradition based on Article 85/2 and Article 31/3.

4

It did not certify extradition based on Article 22/3, because Article 22/3 was not part of the request, not part of the submitted legal materials, and not part of the probable cause determination.

The Government's reliance on Turkey's statement that Article 22/3 "does not constitute an independent offence" but has "an aggravating nature" does not resolve the issue. Dkt. 12 at 10. That statement does not answer what additional facts or *mens rea* findings must be proven before Article 22/3 may be applied. Nor does it answer whether a certification issued without Article 22/3 may now support surrender on an indictment that expressly charges conscious recklessness and seeks additional punishment on that basis. The declaration of Turkish attorney Fazil Ciftci is therefore directly relevant. It does not ask this Court to conduct a collateral review of Turkish criminal procedure. It addresses the narrow issue the Government's submission omitted: whether Article 22/3 requires proof of a distinct culpability finding beyond ordinary recklessness. *See* Dkt. 11-1 (concluding that "the application of Article 22(3) involves more than a mere increase in punishment; it introduces an additional factual and legal issue and analysis that must be separately noticed, proven, and contested."). That issue matters because § 3184 requires the extradition court to determine whether the evidence is sufficient to sustain "the charge" under the Treaty. Where the operative indictment now includes a culpability theory that was not presented at certification, the Court must decide whether the certification still matches the charge on which surrender is sought.

Second, the Government argues that T.C. received all the process he was due because the magistrate judge later stated that the facts previously found would also establish probable cause for conscious recklessness. Dkt. 12 at 12-13. That argument collapses notice, hearing, and probable cause into a *post hoc* conclusion.

The extradition hearing did not involve Article 22/3. T.C. had no notice that Article 22/3

was being invoked. He had no notice that Turkey would later allege "conscious recklessness." He had no reason to contest whether the evidence showed that he foresaw the fatal and injurious result. And he had no opportunity to present evidence or argument directed to the distinct conscious recklessness standard. The Government says T.C. "cites no evidence" that would undermine the magistrate judge's conscious recklessness finding. Dkt. 12 at 12-13. But that turns the procedural problem into the Government's answer. T.C. was never afforded a hearing on Article 22/3. Had conscious recklessness been presented as the charging theory, T.C. would have contested the reliability and sufficiency of the factual assertions now being used to establish it, including the extraordinary and T.C. contends implausible speed estimates, the conditions of the road, visibility, lighting, the location of the ATV riders, the curve in the roadway, the broken-down ATV, and the Turkish investigative materials attributing secondary fault to the ATV drivers. Likewise, T.C. previously proffered evidence that O.M.A.'s death was not immediate. *See In re T.C.*, No. 24-mj-01365-DLC, Dkt. 142 at 4-6. Rather, medical records showed significant intervening issues: O.M.A. was transported to a hospital nearly 27 kilometers from the accident scene despite the existence of other hospitals less than 5 kilometers away; there was an unexplained delay of approximately one hour and twenty-two minutes between the accident and his admission to the hospital; and additional hours passed before treatment was accepted and approved. *Id.* T.C. also proffered that O.M.A.'s injuries were primarily to his leg, that he was located near another injured person who survived, and that the Turkish materials did not allege injuries to his head, chest, heart, or abdomen. *Id.* Those facts may not have persuaded the extradition court to reject probable cause for ordinary recklessness, but they are highly relevant to medical causation and to whether T.C. foresaw death as the result of his conduct. Those issues bear directly on conscious recklessness, not merely on whether his driving could be characterized as imprudent or reckless.

6

The magistrate judge's alternative finding also conflated objective foreseeability with conscious recklessness. Article 22/3 requires that "the result is foreseen but is not desired." Dkt 12-6 at 13. It does not ask only whether, in hindsight, the result was foreseeable to a reasonable person. It requires a basis to conclude that T.C. actually foresaw the fatal and injurious result. *See* Dkt. 11-1 ("Hence, [the] allegation of conscious negligence requires a separate factual and legal assessment, since it must be shown that the defendant subjectively foresaw the possible occurrence of the harmful result at the material time."). A finding that a collision was "easily foreseen" because T.C. allegedly drove too fast and ignored requests to slow down does not answer whether T.C. actually foresaw that disabled ATV riders would be stopped near a dark curve and that death or serious injury would result. The Government's position would eliminate the difference between ordinary recklessness and conscious recklessness. If speed and passenger warnings alone automatically establish conscious recklessness, Article 22/3 adds nothing to Article 85/2. But Turkey's indictment treats Article 22/3 as an additional aggravating basis and seeks increased punishment because of it. The Court should not allow a certification issued on one culpability theory to support surrender on another without the hearing and probable cause determination § 3184 requires.

Third, the Government relies principally on *Matter of Extradition of Caro*, 283 F. Supp. 3d 993 (D. Colo. 2017), and *Matter of Extradition of Moglia*, 813 F. Supp. 1438 (D. Haw. 1993), for the proposition that enhancements need not be proven in extradition proceedings so long as the underlying offense satisfies the Treaty's minimum penalty requirement. Dkt. 12 at 11-12. Those cases do not control this case.

*Caro* involved a Mexican aggravated kidnapping charge. The court concluded that the Mexican enhancement provisions did not alter the basic terms of kidnapping, which under

Mexican law consisted of depriving another person of liberty. 283 F. Supp. 3d at 1002-04. That is not this case. Article 22/3 does not merely leave the basic terms of Article 85/2 untouched. It changes the culpability theory from ordinary recklessness to conscious recklessness by requiring that the result be foreseen but not desired. In other words, Article 22/3 adds a *mens rea* finding. *Caro* likewise did not involve a post-certification indictment that added a previously omitted *mens rea* provision and sought additional punishment on that new theory.

*Moglia* is likewise distinguishable. There, the issue was whether probable cause existed without separately addressing all circumstances that might give rise to an aggravated penalty. 813 F. Supp. at 1450. The case likewise did not involve a requesting state adding a new statutory provision after certification, omitting that provision from the Treaty materials, and then relying on the new provision to charge a more culpable mental state.

The magistrate judge's analogy to drug weight enhancements also does not resolve the issue. Drug quantity does not alter the *mens rea* required to commit a drug offense. Article 22/3 does. It requires proof that the accused foresaw the result but did not desire it. That is a classic mental state requirement. Moreover, even with drug quantity, domestic law recognizes that facts increasing the statutory maximum may need to be charged and proven as elements of an aggravated offense. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001). Thus, even if Article 22/3 is characterized as an aggravating provision, that label does not make it irrelevant to notice, probable cause, Article 7, or the scope of certification.

Fourth, the Government argues that Article 7 was satisfied because Article 85/2 carries a punishment exceeding one year and therefore meets the Treaty's minimum penalty requirement. Dkt. 12 at 13-14. That reading is too narrow and cannot be reconciled with the Treaty text. Article

7(1)(e) requires the requesting state to provide "[t]he text of the applicable laws of the Requesting Party, including the law defining the offense, the law prescribing the punishment for the offense, and the law relating to the limitation of legal proceedings or the enforcement of the penalty for the offense." Treaty, art. 7(1)(e). If Article 7 served only to confirm that the offense exceeded a one-year threshold, there would be no reason for the Treaty to require the law defining the offense, the law prescribing punishment, and the law governing limitations and enforcement. Those requirements serve a notice and gatekeeping function. They allow the extradition court to determine what charge is before it, what punishment is sought, whether the Treaty applies, whether dual criminality is satisfied, and whether the evidence is sufficient to sustain the charge. Article 22/3 falls squarely within Article 7. It defines conscious recklessness as a culpability theory by requiring that the result be foreseen but not desired. It also prescribes a one-third to one-half punishment increase. It therefore is both a law defining the offense and a law prescribing punishment. Yet, it was not included in the original Treaty submission. It was not considered by the extradition court. It was not part of the certification. *Aguasvivas v. Pompeo*, 984 F.3d 1047 (1st Cir. 2021) confirms that Treaty document requirements matter and are judicially enforceable on *habeas* review. In *Aguasvivas,* the First Circuit affirmed *habeas* relief where the government's submission failed to supply the documents the treaty required. 984 F.3d at 1055-58. The same principle controls here. Turkey cannot obtain certification on one set of submitted laws and charges and then rely on a post-certification indictment that adds an omitted law defining the culpability theory and increasing punishment.

 Finally, the Government argues that Article 16 and the rule of specialty do not apply because T.C. has not yet been extradited. Dkt. 12 at 14-17. But T.C. is not asking this Court to adjudicate a post-extradition specialty violation. He is asking the Court to prevent surrender on a

certification that does not match the operative indictment and that would create uncertainty as to what the United States has authorized. Article 16 provides that a person extradited under the Treaty may not be prosecuted, punished, detained for enforcement of a sentence, or subjected to other restrictions on personal freedom for an offense committed before surrender other than that for which extradition was granted, absent consent and compliance with Article 7. Treaty, art. 16. That protection necessarily depends on the scope of the extradition grant. The judicial certification is the foundation for that grant. If the existing certification is allowed to support surrender on the March 10, 2026 indictment, Turkey may argue that the United States authorized prosecution and punishment under Article 22/3. If the certification does not include Article 22/3, then surrender without clarification creates ambiguity that would prejudice the later application of specialty in Turkey.

The Government's cited specialty cases do not compel a different result. In *United States v. Saccoccia*, 58 F.3d 754 (1st Cir. 1995), the First Circuit applied specialty in a practical, common-sense manner and held that the rule does not require an exact mirror image of the original indictment. But *Saccoccia* did not hold that a requesting state may obtain extradition on one culpability and punishment theory and then proceed on a materially more aggravated *mens rea* theory that was not submitted before certification. Nor did it involve a post-certification indictment adding an omitted statutory provision that changes the *mens rea* finding required for increased punishment. *United States v. Andonian*, 29 F.3d 1432 (9th Cir. 1994), is similarly distinguishable. There, the superseding indictment added more specific money-laundering counts, but the indictment did not alter the nature of the scheme or the particular offenses alleged. *Id*. at 1435-36. The added counts were not treated as independent because they were part of the same money laundering scheme for which extradition had been granted. Here, by contrast, the new indictment

10

does not merely add more factual detail or additional counts of the same offense. It adds Article 22/3, charges conscious recklessness, and seeks a punishment increase based on an additional *mens rea* finding.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in the Petition, T.C. respectfully requests that this Court grant the Petition, stay his surrender pending resolution of this matter and any appeal.

Respectfully Submitted,

T.C.,
By his attorneys,

*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.
BBO #519480
20 Park Plaza
Suite 1000
Boston, MA 02116
(617) 227-3700

*/s/ Victoria Kelleher*
Victoria Kelleher
Kelleher & Maceo, P.C.
BBO #637908
53 State Street
Suite 500
Boston MA 02109
(978) 744-4126

*/s/ Maksim Nemtsev*
Maksim Nemtsev, Esq.
Mass. Bar No. 690826
20 Park Plaza, Suite 1000
Boston, MA 02116
(617) 227-3700
max@mnpc.law

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of this document was served on all counsel of record this day, June 19, 2026 via ECF.


*/s/ Martin G. Weinberg*
Martin G. Weinberg, Esq.